UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| BILLY FORESTER, | ) | |
| | ) | |
| Plaintiff, | ) | 3:21-CV-00180-DCLC-DCP |
| | ) | |
| v. | ) | |
| | ) | |
| SERVICE EXPERTS HEATING AND AIR CONDITIONING LLC, | ) ) ) | |
| | ) | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Billy Forester ("Forester") sued his former employer Defendant Service Experts Heating and Air Conditioning, LLC ("Service Experts") claiming it terminated him in retaliation for filing a workers' compensation claim [Doc. 1-1]. Service Experts filed a Motion for Summary Judgment [Doc. 19]. For the reasons stated below, the motion is **GRANTED**.

**I.     BACKGROUND**

On May 28, 2019, Forester began working for Service Experts as an Installer Helper, Residential, of heating and air conditioning units [Doc. 20-1, pgs. 4, 21]. On October 21, 2019, Forester experienced right shoulder pain before going to work [Doc. 23-1, ¶ 5]. After receiving medical care for this injury, Forester requested and received FMLA leave. Forester remained on medical leave until December 11, 2019 [Doc. 23-1, ¶ 5].

The day after he returned to work, Forester's supervisor Adam Hacker called Forester and two others with whom Forester had installed equipment on December 11 into his office [Doc. 23-1, ¶ 8]. Hacker informed them that a gas leak had occurred on the job they had done on December

1

11th [Doc. 23-1, ¶ 8]. He "wrote up" the other two workers and advised Forester that he would be terminated if he incurred three such reprimands [Doc. 23-1, ¶ 8].

On December 17, 2019, Forester reinjured his shoulder when he was assisting a co-worker lowering an air conditioning unit to the ground [Doc. 20-1, pg. 10]. Forester reported the injury to Hacker, who advised him to seek medical care [Doc. 20-1, pg. 11, Doc. 23-1, ¶¶ 10–11]. He did and was restricted to lifting no more than ten pounds [Doc. 20-1, pgs. 28–30; Doc. 23-1, ¶ 13]. Forester advised Hacker of the lifting restriction, who again advised him to go home and "get better" [Doc. 23-1, ¶ 13]. Although Forester asked to return to work, a representative of Service Experts advised him that it had no work available with that lifting restriction [Doc. 20-1, pg. 17]. Forester contends he called Service Experts several times and complained he was not receiving workers' compensation benefits, but Service Experts disputes this [Doc. 23-1, ¶¶ 15–16].

On January 24, 2020, Hacker advised Forester that his medical restrictions prevented him from performing his job, and as a result, his employment would end [Doc. 23-1, ¶¶ 18–19].[1] Forester received a letter dated February 13, 2020, from Hacker in response to a call Forester placed to HR on February 4 [Doc. 23-1, ¶ 22; Doc. 23-4]. The letter indicated that HR was aware of a potential workplace-related injury and that if Forester sustained such an injury, he should report it to Hacker as soon as possible [Doc. 23-4]. Forester called Hacker on February 14th, at which time Hacker claims he first learned about the work-relatedness of the injury [Doc. 20-2, 45:14–46:3]. At some later time, the record is not clear when, Forester filed a claim with the Tennessee Bureau of Workers' Compensation [Doc. 23-1, ¶ 24].[2] Hacker sent a second

---

[1] On February 5, 2020, Hacker sent Forester a termination letter, which Forester contends he did not receive until it was produced in this litigation [Doc. 23-1, ¶ 20; Doc. 23-7]. The letter cited Forester's inability to perform the duties required by his job description [Doc. 23-7].

[2]  Forester filed and received a workers' compensation settlement [Doc. 20-1, Forester Depo., pg. 55-56]

2

termination letter by email to Forester on April 7, 2020, in which he repeated that Forester's physician had not released him to work without restrictions and explained that there were no other positions available with those lifting restrictions [Doc. 23-5]. This suit followed.

## II. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the Court must generally view the facts contained in the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "come forward with significant probative evidence showing that a genuine issue exists for trial." *McKinley v. Bowlen*, 8 F. App'x 488, 491 (6th Cir. 2001). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the nonmoving party based on the record. *Id*.

## III. DISCUSSION

Forester claims that Service Experts terminated him in retaliation for filing a workers' compensation claim. The Tennessee Supreme Court created a common law claim to protect employees from termination in retaliation for filing a workers' compensation claim.[3] *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 445 (Tenn. 1984); *see also Cobb v. Keystone Memphis, LLC*,

---

[3] Tennessee law applies to the substantive issues in this diversity suit. 28 U.S.C. § 1332(a); *See Surles ex rel Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 296 n. 1 (6th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).

3

526 F. App'x 623, 626 (6th Cir. 2013) (recognizing Tennessee's common law claim for retaliatory discharge). To make out a *prima facie* case for retaliatory discharge, the employee must show that: (1) he was an employee of the defendant at the time of the injury; (2) he made a claim against the defendant for workers' compensation benefits, (3) the defendant employer terminated his employment, and (4) the workers' compensation claim was a substantial factor in the defendant's decision to terminate his employment. *Yardley v. Hosp. Housekeeping Sys., LLC*, 470 S.W.3d 800, 805 (Tenn. 2015). Tennessee courts have emphasized, however, that this claim is "a narrow exception to the employment at will doctrine." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 389 (Tenn. Ct. App. 2006). If the employee makes a *prima facie* case of retaliation, then the burden shifts to the employer to prove a legitimate, non-pretextual reason for discharging the employee. Tenn. Code Ann. § 4-21-311(e).

In this case, Service Experts does not dispute the first three elements. It contends, however, that Forester's workers' compensation claim was not a substantial factor in its decision to terminate his employment [Doc. 24, pg. 7].

Forester can show his workers' compensation claim was a "substantial factor" in his termination through direct evidence or "compelling circumstantial evidence" of a causal connection between his workers' compensation claim and his termination. *Thomason v. Better-Bilt Aluminum Prods., Inc.*, 831 S.W.2d 291, 293 (Tenn. Ct. App. 1992). The Tennessee Court of Appeals summarized several forms of circumstantial evidence to prove retaliatory discharge, including the following:

> the employer's knowledge of the compensation claim, the expression of a negative attitude by the employer toward an employee's injury, the employer's failure to adhere to established company policy, discriminatory treatment when compared to similarly situated employees, sudden and marked changes in an employee's performance evaluations after a workers' compensation claim, or evidence tending to show that the stated reason for discharge was false.

4

*Newcomb*, 222 S.W.3d at 391. But "[a] plaintiff's subjective beliefs, mere speculation, or testimony that the employee can think of no other reason for the discharge cannot, in and of themselves, create the requisite causal relationship." *Id*. A plaintiff also does not prevail by only showing "a causal connection … between [his] on-the-job injury and [his] subsequent discharge. Instead, the plaintiff must show that [his] claim for workers' compensation benefits, as opposed to [his] injury, was the true or substantial reason for [his] discharge." *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677, 685 (Tenn. Ct. App. 1999).

Forester contends he has shown his workers' compensation claim was a substantial factor in Service Experts' decision to terminate his employment because of the temporal proximity between his inquiry into why he was not receiving workers' compensation benefits and his termination. Temporal proximity alone is generally not sufficient to show causation. *Newcomb*, 222 S.W.3d at 391; *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 648 (Tenn. 1995) (finding that a three-week time period between the plaintiff receiving workers' compensation benefits and his termination was sufficient to show causation). Moreover, "proximity in time without evidence of satisfactory job performance does not make a prima facie case." *Id.* (citations omitted).

Forester claims the timing of the firing is compelling evidence of causation. Forester claims that he inquired with his supervisor, Adam Hacker, on January 24, 2020, as to why he was not receiving workers' compensation benefits. Forester claims that he had not filed a claim for workers' compensation benefits at the time of this conversation but did so later [Doc. 23, pg. 6]. Forester agrees that Service Experts did not terminate his employment until April 7, 2020 [Doc. 23, pg. 6]. In the termination letter, Service Experts advised Forester that the reason for his termination was because his medical restrictions precluded him from performing the duties as an

installation helper [Doc. 23-5].

Forester argues that Service Experts intended to terminate him on February 5, 2020, a day after Forester advised Hacker that he wanted workers' compensation benefits [Doc. 23, pg. 11]. Forester contends that temporal proximity in this case is sufficient because he otherwise performed his duties in a satisfactory manner. [Doc. 23, pg. 12]. He also argues circumstantial evidence supports this conclusion because he made numerous attempts to reach HR and they never called him back. He claims HR "dodge[d] [his] calls." [Doc. 23, pg. 13]. Finally, he claims Services Experts did not follow its own Return to Work program [Doc. 23, pgs. 13–15].

Service Experts argues this evidence is not sufficient to show causation. It contends its first notification of any injury was Forester's shoulder injury in October 2019 [Doc. 20, pg. 8]. In response to that, it gave Forester FMLA leave until he was cleared to return to work on December 11, 2019 [*Id.*]. Six days later, Forester injured his shoulder again and was restricted to lifting no more than 10 pounds [Doc. 23-1, ¶ 13]. Service Experts claims that it was unaware Forester was claiming a worker's compensation injury when it decided to terminate him in February [Doc. 20, pg. 8]. But that claim is in dispute. Forester testified that he contacted HR sometime in January or February [Doc. 20-1, pg. 15]. That statement leaves open the possibility that Service Experts *was* aware of Forester's potential workers' compensation claim when it fired Forester. The record provides at best shaky support for Service Experts' claim. Further, Adam Hacker's February 14 letter to Forester referenced a call to HR requesting workers' compensation the day before the February 5 termination [Doc. 23-4]. Although it is a close call, the Court will assume Forester has made out a *prima facie* case for retaliation for claiming workers' compensation benefits.

Once a plaintiff shows a *prima facie* case, the burden shifts to the employer to show it had a legitimate, non-pretextual reason for terminating the plaintiff's employment. *Williams v. City of*

6

*Burns*, 465 S.W.3d 96, 112 (Tenn. 2015). In this case, Service Experts notes that it is undisputed that the job position Forester held required him to be able to lift up to 75 pounds and carry up to 50 pounds [Doc 20, pg. 10; Doc. 20-1, pg. 22]. It also notes that Forester's medical restrictions prevent him from performing the essential functions of that position [Doc. 20, pg. 10]. While Forester claims he could work as an installer helper, he admitted it had to be within his medical restrictions [Doc. 23-1, ¶ 28]. But his medical restrictions specifically excluded him from performing the essential functions as an installer helper [Doc. 20-1, pg. 22]. As the Tennessee Supreme Court noted, "physical inability to do the job" is a legitimate reason for discharge. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993) *overruled on other grounds by Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73 (Tenn. 2012). Service Experts has shown a legitimate, non-retaliatory reason for its decision to terminate Forester.

Once Service Experts proffers a legitimate, non-retaliatory reason for the termination, then the burden shifts back to Forester to produce "'additional, compelling evidence of pretext' by showing 'specific, admissible facts, which realistically challenge the defendant's stated reasons' for its actions." *Thayer v. Tyson Foods, Inc.*, 355 F. App'x 886, 889–90 (6th Cir. 2009) (quoting *Ellis v. Buzzi Unicem USA*, 293 F. App'x. 365, 368 (6th Cir.2008)); *see also Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 200 (Tenn. Ct. App. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). He can show pretext by showing "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the decision to terminate his employment], or (3) that they were insufficient to motive [the decision to terminate his employment]." *Banks v. Argos Risk Mgmt. Servs., LLC*, 963 F. Supp. 2d 778, 788 (M.D. Tenn. 2013).

Forester claims the proffered reason for his termination is pretextual for several reasons.

7

First, he claims Hacker had "animus" against him as demonstrated by Hacker writing him up for a gas leak at a customer's home on a job Forester had assisted [Doc. 23, pg. 17]. But this fails to show any animus directed at Forester because Hacker wrote up not only Forester but also the other two employees who were on the job as well [Doc. 23-1, ¶ 8]. He did not single out Forester. Next Forester claims Hacker treated him differently because he "first glared at him then smiled in a manner that [] Forester interpreted to mean that Adam Hacker was excited about potentially firing him." [Doc. 23, pg. 18; Doc. 23-1, ¶ 8]. But this hardly shows pretext given the fact that this interaction occurred in early December, well before workers' compensation entered the picture, when Hacker was talking about the gas leak in a customer's home. In any event, this contention does not address the undisputed fact that Forester could not perform the physical requirements of an installer helper. Third, Forester contends this proffered reason is pretextual because Hacker lied about Forester telling him about his injury and lied about trying to call Forester by telephone [Doc. 23, pg. 19-20]. Again, Forester's argument misses the point. Even if Hacker was not candid in his deposition, that does not address Forester's work restrictions and how those preclude him from performing the essential functions of the job. Fourth, he argues Service Experts did not follow its Return to Work policy. He notes that he was never offered any temporary transitional duties or modified job duties [Doc. 23-1, ¶ 26]. He claims that he was willing "to perform his duties as an installer helper within his lifting restrictions." [Doc. 23, pg. 22]. Forester claims there were other positions he could have performed within the company, such as sales positions, but Service Experts did not offer him any. [*Id.*]. But Forester cites no authority that required Service Experts to offer him other positions within the company. Moreover, his contentions are undercut by his own deposition testimony in which he acknowledged there were no other positions he could perform with his work restrictions, and he did not seek to apply for any other positions in any

event. [Doc. 20-1, Forester Depo., pg. 59].

Forester has failed to show Service Experts terminated him because of his workers' compensation claim as opposed to his injury and his ultimate inability to perform the essential functions of his job. *Cf. Reed*, 4 S.W.3d at 685. Forester has submitted no compelling evidence of pretext by "showing 'specific, admissible facts, which realistically challenge the defendant's stated reasons' for its actions." *Thayer*, 355 F. App'x at 889–90. Accordingly, Service Expert's motion for summary judgment is due to be **GRANTED**.

## IV. CONCLUSION

For these reasons, Service Experts' motion [Doc. 19] is **GRANTED**.

A separate judgment shall enter.

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge